Chicago, Rock Island & Pacific Railway Company *v.* Stallings.

Opinion delivered February 18, 1918.

1. Carriers—delay in shipping cattle.—A. had cattle to ship over defendant carrier's line, and was told that a car would be ready for shipment on a certain train. The train did not take up the car, nor did the next train, which the agent told A. would take up his car of cattle. A. suffered damages by reason of the delay. *Held,* a verdict in A.'s favor would not be disturbed.

2. Carriers—delay in shipping cattle—damages.—Under the above facts, *held* that where many of the cattle lost weight by reason of the delay, and others broke loose and had to be recovered, there being fifty-seven head in all, that a verdict for $150 damages was not excessive.

Appeal from Prairie Circuit Court, Southern District; *Thomas C. Trimble,* Judge; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1.   This case does not fall within the rule in 88 Ark. 138. Defendant was not liable under the facts proven. Defendant's agent finally told plaintiff that the through train would not stop for the cattle. Defendant had no right to agree to give plaintiff service not given to the public generally. 225 U. S. 155.

2.   The verdict is grossly excessive and based on incompetent testimony as to classification, weight and shrinkage. The testimony as to loss in weight was a mere guess. There was no responsibility for the escape of the bull. The cattle were not hurt or injured. 68 Ark. 218-222.

3. Incompetent testimony which was prejudicial was admitted. 68 Ark. 218.

*Trimble & Williams,* for appellee.

1. This case comes fairly within 88 Ark. 138, and is not in line with 225 U. S. 155.

The agent stated the cattle would go on the through train that night.

2. The verdict is not excessive. The cattle had been weighed and plaintiff was a stock man and familiar with shrinkage of cattle. The testimony was competent and the verdict small. The witnesses were experienced in the cattle business and qualified to testify as to loss in weight.

3. There is no error in the instructions, and the verdict is supported by the evidence.

HART, J. C. R. Stallings sued the Chicago, Rock Island & Pacific Railway Company and Jacob M. Dickinson, Receiver, for damages to a car of cattle for delay in shipping them.

The answer of the defendants was a general denial. The case was tried before a jury, which returned a verdict for the plaintiff in the sum of $150. From the judgment rendered the defendants have appealed.

It is first contended by counsel for defendants that there was no liability under the facts proved by the plaintiff. The plaintiff was in the live stock business and lived at Hazen, Arkansas. Before the 20th of November, 1915, he ordered a stock car for shipment of some cattle to East St. Louis, Illinois. The car did not come on the day it was expected. The plaintiff had his cattle in a pasture about a mile and a half or two miles from Hazen. He was informed that the car would be there on a certain morning attached to the local freight. He sent out to the pasture and had his cattle brought to the station. He got them in the stock pen while the train was there, but before he could load them into the car the train pulled out. It was the custom of the local freight to wait for cattle to be loaded in the car when they were in the stock pen. When the train left without carrying his cattle, the plain-

tiff went to the agent and asked him when there would be another train. The agent, after telegraphing about the matter, told him there would be a through freight train along there some time in the night which would carry the car of cattle. There were forty-seven head of the cattle and seven of them were bulls. The agent directed the plaintiff to tie the bulls in the car. This was done. It was understood that the other cattle should be kept in the pen until the freight train would arrive when they would be loaded into the car. The through freight did not stop for the car of cattle that night and the bulls broke loose and escaped. The cattle were kept there until 5 o'clock the next afternoon before they were carried out. The plaintiff said that he would have carried his cattle back to the pasture if the agent had not told him that the through freight train would stop and take them up. It was shown on the part of the railway company that the agent did not make a positive promise to take the cattle that night but that he told the plaintiff he would take them if he could get the train to stop. It is contended by counsel for the railway company that this case is ruled by *Chicago & Alton Railroad Co. v. Kirby*, 225 U. S. 155, in which it was held that to guarantee a particular connection and transportation by a particular train amounts to giving a preference when not open to all, and provided for in the published tariff, and under the Elkins act is an illegal discrimination.

We do not think the facts bring the case within the principles of law decided there. The present case is controlled by *St. Louis & San Francisco Rd. Co. v. Vaughan*, 88 Ark. 138, where it was held: "Evidence that a railroad station agent informed a shipper of live stock that he could get his cattle moved right away, upon which he relied and left his cattle loaded in the cars for over ten hours on a cold rainy night in midwinter, before they were moved, instead of taking them out and caring for them during the delay, as he would otherwise have done, and that the cattle were materially injured by the delay was sufficient to sustain a finding that the railroad company was negligent."

The plaintiff predicates the negligence of the railroad company upon the fact that he was told by the agent

that a through freight would stop during the night and carry his cattle, that relying upon this promise he loaded part of his cattle in the car and by directions of the agent left the others in a pen ready for loading; that there were no troughs in the pen so that cattle might be fed and watered; that he would have carried the cattle back to the pasture had he not have been assured by the defendants' agents that the cattle would be picked up by the train passing that night. The railway company had knowledge of the movements of its own trains and knew which of them carried cattle. This fact was unknown to the plaintiff, and he had a right to rely upon the statements of the agent in this regard. Hence the railroad company will be responsible for the loss to the cattle because of its negligence in the respects named. *Chicago, Rock Island & Pacific Ry. Co.* v. *Butler*, 59 A. L. R. 39.

It is next contended by counsel for the defendant that the verdict is excessive. The plaintiff and other witnesses who testified in his behalf on the question of damages to the cattle were experienced cattle men. They did not weigh the cattle to ascertain their shrinkage but on account of their experience they could know by looking at the cattle about how much they had lost in weight. They testified in detail how much the cattle would reduce in weight by waiting there the length of time in question without being fed and watered. They also testified that it would take a week with proper feeding and watering for them to regain their lost weight. They gave in detail the average amounts each of the cattle would be reduced in weight by the delay and the aggregate amounted to $180. The verdict of the jury was for $150. Hence it can not be said that the verdict was excessive.

The judgment will be affirmed.